INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE,
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW), and
THOMAS BODE, BRUCE EATON,
WILLIAM BURNS, PETER ANTONELLIS, and
others similarly-situated,

              Plaintiffs,

                                      Case No. 11-CV-14036
v.                                    Hon. Denise Page Hood

HONEYWELL INTERNATIONAL INC.,

              Defendant.
_____/

## ORDER REGARDING VARIOUS MOTIONS

## I.    INTRODUCTION

Plaintiffs, including the UAW and the individually named Plaintiffs (retired hourly employees who worked for Defendant and its predecessors), filed the present action on September 15, 2011. Plaintiffs alleged ERISA violations and an anticipatory breach of the collective bargaining agreements ("CBAs") entered into by the UAW and Honeywell International, Inc. ("Honeywell" or "Defendant"), specifically the scope and duration of retiree health care benefits to which the retirees

are entitled. There are multiple outstanding motions, each of which has been fully briefed and is addressed below.[1]

## II.    BACKGROUND

For over 50 years, the UAW has represented over 4,700 retired Honeywell (and its predecessors) manufacturing employees in collective bargaining negotiations. The UAW and Defendant have been parties to a series of CBAs that were renegotiated every three or four years. In every CBA executed from the 1965 CBA up to and including the 2003 and 2007 CBAs, the Agreement Regarding Insurance provision included the following language (the "full " provision):

> [T]he Company shall contribute the full premium or subscription charge applicable to the coverages of a pensioner (not including a former employee entitled to or receiving a deferred vested pension) and an employee terminating at age 65 . . .

*See, e.g.,* Dkt. No. 49, Ex. 5 (1965 CBA), App'x C, Sect. 5(G), at 12-13; Dkt. No. 49, Ex. 8 (2003-2007 CBA), PgID 1905; Dkt. No. 49, Ex. 9 (2007-2011 CBA), PgID 19-12-13. With respect to the 2011 CBA (which the parties reference), the Court has only been presented with a "Memorandum of Terms of Settlement of the 2011 UAW-Honeywell Master Negotiations."  Nothing in that Memorandum addresses – or

---

[1]The Court notes that both parties filed Supplemental Briefs on March 26, 2018, as permitted by the Court pursuant to a March 5, 2018 telephonic status conference. The Court has reviewed and considered the Supplemental Briefs.

expressly eliminates – the "full premium" provision.

In 2003, the parties agreed to the inclusion of a new section to Appendix C of the CBA, a "Part VI," a section that also was included in the 2007 CBA (and, apparently, the 2011 CBA). Part VI of the 2003 CBA states:

> During the 2003 UAW Honeywell Master Negotiations, the Company and the Union shared a strong concern regarding the protection of retiree health care benefits. In 2003 UAW Honeywell Master Negotiations the Company and Union agree as follows:
>
> • The subject of health care benefits for present and future retirees, their dependents, and surviving spouses, including the limit described below on Company retiree health care contributions, will be a mandatory subject of bargaining for 2007 UAW Honeywell Master Negotiations and for all future UAW Honeywell Master Negotiations.
>
> • The Company will pay the cost of retiree health care coverage during the term of the 2003 UAW Honeywell Master Agreement as described in its Insurance Section. The Company's contribution for health care coverage after 2007 for present and future retirees, their dependents, and surviving spouses covered under the UAW Honeywell Master Agreement shall not be less than (A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company actuary's 2003 estimate of the Company's retiree health care contribution in 2007, whichever is greater. As stated above, this limit will be a mandatory subject of bargaining for 2007 UAW Honeywell Master Negotiations and for all future UAW Honeywell Master Negotiations. Notwithstanding such negotiations, the Company's contributions shall not be less than the greater of: (A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company actuary's 2003 estimate of the Company's retiree health care contribution in 2007.

- The above limit on Company retiree health care contributions will not apply to any year prior to calendar year 2008.

\* \* \* \* \*

- The provisions of this Agreement concerning Retiree Health Care Costs and the Company's obligation to bargain regarding retiree health care benefits shall be binding upon the successors and assignees of the Company, unless Honeywell chooses to retain such obligations. . . .

- Provided however this Agreement concerning Retiree Health Care Costs and the Company's obligation to bargain regarding retiree health care cost benefits shall not impair any existing legal rights that current retirees may have with respect to their post employment health care benefits.

- The Company and the Union agree to work together to develop possible ways to contain health care costs, including drug costs, that will benefit plan participants and the locations covered under the UAW Honeywell Master Agreement.

[Docket No. 49, Ex. 8, Pg ID 1907]

In connection with the closing of Defendant's Cleveland, Tennessee facility in 2004, Defendant and the UAW entered into a closing agreement that stated: "Honeywell shall incorporate the Cleveland UAW retirees and their dependents, and surviving spouses into its Honeywell UAW Master Agreement, solely for the purpose of negotiating the limit on Company retiree health care contributions." Dkt. No. 49, Ex. 11, at 1. The Cleveland, Tennessee facility's closing agreement included essentially the same language as the Part VI language of the 2003 CBA. Dkt. No. 95,

PgId 4385.

In the 2007 CBA, Part VI was identical, except that it provided that "The above limit on Company retiree health care contributions will not apply to any year prior to calendar year 2012." Again, the 2011 CBA (at least in the same form as the 2003 and 2007 CBAs produced during briefing) has not been filed with the Court. The "Memorandum of Terms of Settlement of the 2011 UAW-Honeywell Master Negotiations" does not include any provisions regarding retiree health care contributions for employees who retired prior to January 1, 2016. *See, e.g.,* Dkt. No. 26, Ex. 1 at PgID 944.

On September 15, 2011, Plaintiffs filed the present action in the Eastern District of Michigan, alleging that Defendant's actions constituted anticipatory breach of the CBAs. Defendant notified retirees on September 19, 2011 of its intention to limit its health care contributions starting January 1, 2012. At a November 30, 2011 hearing before the New Jersey District Court, the UAW argued that it "doesn't bargain for retirees" and is not the "designated representative" for retirees. [Docket No. 27, Pg ID 1496, 1498] Ultimately, Defendant did not limit (or "cap") its health care contributions for retirees as of January 1, 2012 but instead waited to do so until January 1, 2014.

On January 30, 2012, Defendant filed its Answer and Counterclaims against

Plaintiffs. Defendant's counterclaims alleged fraudulent misrepresentation under Michigan and New Jersey law, negligent misrepresentation under Michigan and New Jersey law, breach of the implied warranty of authority under Michigan and New Jersey law. On March 13, 2012, Defendant amended its Answer and Counterclaim to include a counterclaim for fraudulent concealment. On March 28, 2013, the Court entered an Order denying all of Defendant's counterclaims except the counterclaim for breach of implied warranty of authority.

On October 23, 2013, Defendant advised that it would:

> begin to cap contributions for those members of the class that (i) retired under the Honeywell-UAW Master CBA on or after May 3, 2003; or (ii) retired under the Cleveland, Tennessee CBA on or after March 13, 2004. This includes surviving spouses and eligible dependents of individuals that retired after those dates. Collections from those class members will commence on January 1, 2014. We will soon be sending out individual notices to those class members to inform them of the healthcare contributions they will owe beginning on January 1, 2014.

Plaintiffs objected on several grounds, including that the CBA did not contain a "cap." Defendant responded that the contribution language in Part VI is a cap and not a floor on Honeywell's contribution obligation. Defendant indicated it would begin to impose the "caps" on 848 "UAW retirees and covered dependents" and "181 Cleveland TN retirees and covered dependents." Defendant stated that the monthly contributions would range from 12.44 to $447.54 for Medicare-eligible retirees. Dkt. No. 49, Ex. 3. Defendant later sent letters to post-2003 retirees that it would be

imposing a "cap" on January 1, 2014 (Dkt. No. 49, Exs. 14-15), and it did so. For retirees who could not or did not pay the premium amounts Defendant imposed, Defendant indicated that the retirees could not elect to receive the "capped" contribution obligation amount Defendant made on behalf of retirees who did pay premium amounts. Dkt. No. 49, Ex. 1.

## III.  SUMMARY JUDGMENT STANDARD

A Court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. Id. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the

existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## IV.    ANALYSIS

### A.    Cross-Motions for Partial Summary Judgment re: Caps
### (Dkt. No. 49: UAW's Motion; Dkt. No. 77: Defendant's Motion)

Plaintiffs moved for summary judgment and permanent injunction on behalf of post-2003 retirees regarding Defendant's plan to collect monthly premium contributions from post-2003 retirees, a plan that took effect on January 1, 2014.

Plaintiffs contend that Defendant breached the 2003, 2007, and 2011 CBAs and violated ERISA by not paying the full premium for retiree health care coverage and requiring retirees to make premium contributions in excess of the premium amount Defendant would pay (also known as "caps" on Defendant's premium contributions). Plaintiffs ask the Court to order Defendant to pay the full premium for retirees, as required under the CBAs.

The first matter at issue in the briefs pertains to whether retirees had vested lifetime health care benefits. The answer, as addressed at Section IV.C. below, is no.

The second matter about which the parties argue is the meaning of the following provision in Part VI of the 2003 and 2007 CBAs (as well as the ensuing related language set forth in Section II above):

> The Company's contribution for health care coverage after 2007 for present and future retirees, their dependents, and surviving spouses covered under the UAW Honeywell Master Agreement shall not be less than (A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company's actuary's 2003 estimate of the Company's retiree health care contribution in 2007, whichever is greater. As stated above, this limit will be a mandatory subject of bargaining . . . for all future UAW Honeywell Master negotiations.

[Docket No. 77, Pg ID 3769 (citing Dkt. No. 77, Ex. 2 at Ex. B at 61) (emphasis added)]

Plaintiffs argue that this language: (1) does not vitiate Defendant's promise to pay the "full premium" for retirement health care; and (2) constitutes only a floor –

Defendant's minimum premium contribution obligation ("no less than" the 2003 actuary estimate or 2007 contribution amount, whichever is greater). Plaintiffs argue that the "no less than" language in the CBAs defines "Honeywell's contribution obligation after 2007 (later change[d] to after 2011, . . .) in terms of a minimum amount, not a maximum." Dkt. No. 49, PgID 1829 [*see also* Dkt. No. 49, PgID 1830: "These provisions unambiguously describe Honeywell's contribution obligation as a minimum, not a maximum."]. Plaintiffs argue that extrinsic evidence should not be permitted because the contract language is unambiguous.

Defendant's "cross"-motion asks the Court to reach the opposite conclusion: that the plain language of the 2003 collective bargaining agreement establishes a cap (or maximum) on how much Defendant must contribute to the post-2003 retirees and the post-2004 Cleveland retirees for their health care. Defendant argues that its obligation is "limit[ed]" to the greater of: "(A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company's actuary's 2003 estimate of the Company's retiree health care contribution in 2007." Defendant relies on the fact that the word "limit" is used three times – in three separate paragraphs of Part VI – in the CBAs:

> . . . the limit described below on Company retiree health care contribu-
> tions, will be a mandatory subject of bargaining for 2007 UAW
> Honeywell Master Negotiations and for all future UAW Honeywell
> Master Negotiations.

***

. . . As stated above, this limit will be a mandatory subject of bargaining for 2007 UAW Honeywell Master Negotiations and for all future UAW Honeywell Master Negotiations.

***

The above limit on Company retiree health care contributions will not apply to any year prior to calendar year 2012.

Dkt. No. 77, Ex. 2 at Ex. B at 61.

The Court first finds that, as Plaintiffs contend, there was express language in the 2003 and 2007 CBAs that Defendant would pay the "full premium" for retirees through December 31, 2011 – and that there is no evidence that the 2011 CBA requires anything different. The Court also finds that Part VI of the 2003 and 2007 CBAs expressly provide that the terms of Part VI would not apply prior to calendar years 2008 and 2012, respectively, so Part VI of the 2003 and 2007 CBAs did not create any ambiguity regarding Defendant's obligation to pay the full premium prior to calendar year 2012.

The Court further finds that Part VI clearly does not establish any maximum amount of contribution to be made by Defendant. Part VI provides that Defendant's contribution "shall not be less than (A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company's actuary's 2003 estimate of the Company's retiree health care contribution in 2007, whichever is greater." The "shall

not be less than" language establishes only a floor, or minimum, Defendant would have to pay. Significantly, the Court has not been provided with any language in the 2011 CBA or the "Memorandum of Terms of Settlement of the 2011 UAW-Honeywell Master Negotiations" that specifies the obligations of Defendant or any retirees *vis a vis* health care contributions for employees who retired prior to January 1, 2016, such that the Court could conclude that Defendant was not also required to pay the full premium under the 2011 CBA.

With respect to the language in Part VI, the Court finds that it simply memorializes the parties' commitment that the "actual 2007 amount/2003 estimate amount" be "a mandatory subjection of bargaining" in all future UAW Honeywell Master Negotiations. <u>What this means is that Part VI only requires the UAW and Defendant agreed to bargain the "actual 2007 amount/2003 estimate amount." Part VI does not contain any indication that the UAW and Defendant had agreed on any such amount or the establishment of a "cap" on Defendant's contributions for retiree health care coverage</u>. Accordingly, the Court concludes that the "full premium" provision is the only binding agreement between the parties with respect to the 2003 and 2007 CBAs – and, because no evidence has been submitted to the contrary, the 2011 CBA.

The Court concludes that, in the context of Part VI, where the "shall not be less

than language" clearly establishes the "floor" for the amount of retiree health care coverage contribution Defendant was obligated to make, Defendant's contention that the multiple use of "limit" constitutes a maximum is, at best, only one interpretation of the term for purposes of the CBA. First, although the common meaning of "limit" is "a restriction on the size or amount of something permissible or possible," that does not necessarily suggest a maximum any more than a minimum. *See* https://www.merriam-webster.com/dictionary/limit (as of March 26, 2018) (which includes as one definition of "limit" as: "a prescribed maximum or minimum amount, quantity, or number"). The Court finds that another reasonable reading of "limit," taken in context as it is used in Part VI, is simply as a term that describes the "greater of the actual 2007 amount/2003 estimate amount" determination that must be the subject of bargaining.[2]

As the parties did not reach an agreement regarding the "actual 2007 amount/2003 estimate amount" determination (or whether it is a floor or a ceiling) in the 2003, 2007, and (apparently) 2011 CBAs, the only binding language in the CBAs regarding Defendant's payment of retiree heath care costs was that Defendant "shall

---

[2]The parties argue about a third matter: whether, if the caps are valid, Defendant is obligated to provide retirees who elected not to pay the "above cap premiums" the premium obligation amount that Defendant would have paid the retirees so that they could obtain alternative health care coverage. As the Court has concluded that the caps are not valid, the Court need not address this matter.

contribute the full premium or subscription charge" for retirees. Accordingly, the Court concludes that there is no evidence to support a finding that the CBAs provide for any "cap" on Defendant's retiree health care contribution. The Court grants Plaintiffs' Motion for Partial Summary Judgment and denies Defendant's Motion for Partial Summary Judgment. The Court also orders that Defendant: (1) is permanently enjoined from paying anything less than the full premium amount for health care coverage for retirees under the 2003, 2007, and 2011 CBAs and the Cleveland, Tennessee closing agreement; and (2) shall make whole those retirees for whom Defendant paid anything less than the full premium amount for health care coverage under the 2003, 2007, and 2011 CBAs or the Cleveland, Tennessee closing agreement.

**B.      Dkt No. 94: Plaintiffs' Motion for Summary Judgment on Defendant's Breach of Implied Warranty of Authority Counterclaim**

Plaintiffs move the Court to dismiss Defendant's only remaining counterclaim, a claim for alleged breach of implied warranty of authority. As the Court stated in its March 28, 2013 Order:

> The tort of breach of implied warranty of authority exists under both Michigan and New Jersey law. *See Koss v. Ahepa*, 2012 Mich. App. LEXIS 486, 14, 2012 WL 882422 (Mich. Ct. App. Mar. 15, 2012) (unpublished); *Kaminskas v. Litnianski*, 51 Mich. App. 40, 47, 214 N.W.2d 331 (1973); *see also CNH*, 645 F.3d at 793–94. "'[W]here an agent undertakes to contract on behalf of another, and contracts in a manner which is not binding on his principal, he will be personally responsible, as he is presumed to know the exact extent of his authority." *Koss*, 2012 Mich. App. LEXIS 486 at 14. The party claiming a breach of

implied warranty of authority "must have been ignorant of the lack of authority and acted upon the faith of the express or implied representations that the professed agent had the authority assumed." *Kaminskas*, 51 Mich. App. [a]t 46.

[Dkt. No. 45, PgID 1750]

Plaintiffs argue that Defendant cannot establish that there was any misrepresentation by the UAW or reliance by Defendant regarding the UAW's authority to negotiate on behalf of retirees. The Court finds that there is a genuine dispute of fact on both issues. First, the parties disagree regarding the identity of the UAW's chief negotiator. Plaintiffs argue that Richard Atwood was their chief negotiator, whereas Defendant insists that Tom Bode was the person upon whose representations Defendant's representatives relied and, for that reason, discounted Richard Atwood's statements as personal beliefs. Second, as discussed below, there is a genuine dispute of material fact whether Defendant had reason to believe the UAW had the authority to negotiate and bargain on behalf of retirees.

Plaintiffs argue that the counterclaim is time-barred because: (1) the UAW did not conceal that it lacked authority to negotiate on behalf of retirees; and (2) Defendant failed to exercise due diligence. As stated in the March 28, 2013 Order, the Court stated that Defendant's breach of implied warranty claim survives because the claim is grounded in fraudulent concealment. *See* M.C.L. § 600.5855. The fraudulent concealment statute tolls the statute of limitations for claims involving

fraud and applies if: (1) the defendant wrongfully concealed actions; (2) the plaintiff did not discover the operative facts which are the basis of the cause of action within the statute of limitations; and (3) the plaintiff exercised due diligence until discovery of the facts. *Toyz, Inc. v. Wireless Toyz, Inc.*, 799 F.Supp.2d 737, 743 (E.D. Mich. 2011).

The Court finds that there is a genuine dispute of material fact regarding whether the UAW concealed that it lacked authority to negotiate on behalf of retirees. Plaintiffs insist that the UAW did not do so, but Defendant has cited various materials that suggest why Defendant reasonably believed the UAW had the authority to negotiate and bargain on behalf of retirees. The "UAW-Honeywell Report" for the 2003 CBA is a newsletter to UAW-Honeywell members that summarizes some of the gains the UAW achieved during its negotiations with Defendant. *See* Dkt. No. 100-2. The report states "[t]he committee did its work in . . . bargaining to win a contract that advances the economic interests of our *active and retired* members while making improvements in health care and a number of other areas." *Id.* at 3 (emphasis added). The report goes on to say, "[w]orkers who retired on or before May 1, 2003 will be entitled to a special lump-sum payment in each year of the agreement. . ." *Id.* at 5.  A "Company Insurance Proposal" dated April 23, 2003 and entitled "UAW - Honeywell Master Negotiations" includes a proposal that would affect the retail co-payments for

"all active employees and employees not actively at work, and their dependents, *present and future retirees*, their dependents, and surviving spouses." Dkt. No. 100-18 at 7.

There are other documents which suggest the UAW negotiated the contested cap language. The "UAW-Honeywell Master Agreement on Retiree Health Care Costs and Union Right to Bargain for Post-Retirement Health Care Benefits" makes numerous references to retirees, including that: (a) "the Union expressed strong concern about protecting *retiree health care benefits*." Dkt. No. 100-27 at 2 (emphasis added); and (b) "[t]he subject of health care benefits for *present and future retirees*. . .will be a mandatory subject of bargaining for 2007 UAW Honeywell Master Negotiations and for all future UAW Honeywell Master Negotiations." *Id.* Viewing the documents in a light most favorable to Defendant, there is evidence that Defendant could reasonably rely on the UAW's representations that the UAW had the authority to bargain on the behalf of retirees and creates a genuine dispute of material fact as to whether the UAW concealed its lack of the authority to do so.

The Court also concludes that there is a genuine dispute of material fact as to whether Defendant failed to exercise due diligence. In the Court's March 28, 2013 Order, it noted that the UAW and Defendant had a longstanding relationship of bargaining for active and retired employees. Dkt. No. 45, at 15. This longstanding

history may not have alerted either party to the fact that the UAW lacked authority to negotiate. The language in documents produced through discovery, such as the "UAW-Honeywell Master Agreement on Retiree Health Care Costs and Union Right to Bargain for Post-Retirement Health Care Benefits" and the "Company Insurance Proposal UAW - Honeywell Master Negotiations" dated April 23, 2003, make numerous references to retirees and insinuate, if not outright indicate, that the UAW had the authority to negotiate on behalf of retirees.

The Court has not been presented with any "red flag" documents that would communicate to Defendant that the UAW lacked authority to bargain for retirees. Even if there are "decades of governing decisions holding that vested retirees cannot be retroactively diminished," the UAW's conduct alone suggested otherwise. The Court concludes that there remains a genuine issue of material fact as to whether Defendant was diligent. Accordingly, the Court rejects Plaintiffs' argument that Defendant's counterclaim is time-barred.

Defendant's counterclaim also is not pre-empted by federal law. Section 301 of the LMRA confers jurisdiction to the federal courts regarding disputes of labor contract. 29 U.S.C.A. § 185. It "preempts state law claims that 'substantially depend upon' the meaning of a CBA." *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 790 (6th Cir. 2011) (quoting

*Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). When analyzing a preemption claim under Section 301, courts focus on the substance of the dispute rather than its labels. For instance, a contract dispute labeled as a tort will be preempted by § 301; however, true torts, such as misrepresentation or breach of implied warranty of authority, which are based on the conduct of the parties " prior to the formation " of the CBAs, fall outside the purview of Section 301. *CNH Am. LLC*, 645 F.3d at 791.

Plaintiffs argue that the LMRA preempts the breach of warranty claim because, in order to resolve the claim, the Court must interpret language of the CBA. The Court disagrees. In order to analyze the breach of implied warranty of authority counterclaim, the Court must examine the UAW's conduct prior to and during the negotiations of the CBAs, not the CBAs themselves. Accordingly, the LMRA does not preempt Defendant's claim.[3]

For the reasons stated above, the Court denies Plaintiffs' Motion for Summary

_____

[3]The Court previously ruled that Section 8 of the NLRA does not apply to retiree benefits because the NLRA only applies to current, active employees. Dkt. No. 45 at 5. Plaintiffs cite a number of cases, but none of them support its position, and one case confirms that the NLRA does not apply to retirees. *See Union Carbide Corp.*, 197 N.L.R.B. 717 (1972) (the board concluded that retired persons were employees within the meaning of the NLRA but stated that its prior conclusion "now becomes untenable in view of the Supreme Court's decision in *Pittsburgh Plate Glass*.").

Judgment on Defendant's breach of implied warranty of authority counterclaim.

**C.     Defendant's Motion for Summary Judgment [Dkt. No. 97]**

On August 12, 2015, Defendant filed a motion for summary judgment. Defendant argues that: (1) the CBAs do not create lifetime vested retiree health care contributions to pre-2003 retirees; and (2) the contribution caps apply to those retirees. Defendant contends that, as a result of the Supreme Court's opinion in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015) ("*Tackett*"), and its progeny, the Court must construe the CBAs using ordinary principles of contract interpretation and avoid construing ambiguous language to create lifetime rights and promises. Defendant argues that retirees in this case were not entitled to lifetime health care benefits because the CBAs did not provide for – or promise – the retirees "lifetime retirement health care, fully-paid by the employer."  Defendant also contends that the plain language of each CBA unambiguously states that the retirees' health care benefits in each such CBA expire upon the termination of that CBA.

Plaintiffs respond that the CBAs created vested lifetime retiree healthcare contributions and that the contribution caps do not apply.  Plaintiffs argue that the CBA language created vested rights to company contributions to retiree health care benefits and that company admissions and historical conduct on the part of Defendant demonstrate that retiree healthcare contributions are vested.  Plaintiffs contend that

retirees were entitled to lifetime health care benefits, as evidenced by: (a) statements of Defendant's Vice-President; (b) certain language in the collective bargaining agreements; and (c) other indications of the parties' "contemporaneous intent."

This Court – and the Sixth Circuit – historically have held that retirees are entitled to lifetime healthcare benefits, in part because, generally speaking: (1) the collective bargaining agreements did not specify that retirees' health care benefits were limited to the term of each collective bargaining agreement; and (2) extrinsic evidence suggests that lifetime health care benefits for retirees was contemplated by the parties. Those rulings stemmed from the Sixth Circuit's decision in the *Yard-Man* case (*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of America v. Yard-Man, Inc.*, 716 F.2d 1476, 1979 (6th Cir. 1983)), where the court applied an inference that "plac[ed] a thumb on the scale in favor of vested retiree benefits in all collective-bargaining agreements." *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926, 935 (2015).

The effect of *Yard-Man* and its progeny was that "unless the contract contained specific durational language that referred to retiree benefits," an agreement's general-durational clause was treated as "saying nothing about the vesting of retiree benefits." *Watkins v. Honeywell Int'l, Inc.*, 875 F.3d 321, 324 (6th Cir. 2017) (quoting *Noe v. PolyOne Corp.*, 520 F.3d 548, 555 (6th Cir. 2008)). Since 2015, however, when it

decided *Tackett*, the Supreme Court repeatedly rejected the *Yard-Man* inference – and the Sixth Circuit has slowly reached the point of following the Supreme Court's decision in *Tackett*.

In *Tackett*, the Supreme Court ruled that "courts should not require contracts 'to include a specific durational clause' – rather than a general-durational clause – 'for retiree health care benefits to prevent vesting.'" *Watkins*, 875 F.3d at 324 (quoting *Tackett*, 135 S.Ct. at 936). Instead, courts were directed "to consider traditional contract principles that 'courts should not construe ambiguous writings to create lifetime promises' and that contractual obligations generally end 'upon termination of the bargaining agreement.'" *Watkins*, 875 F.3d at 324 (quoting *Tackett*, 135 S.Ct. at 936-37 (citation omitted)).

In November 2017, Defendant notified the Court of the *Watkins* decision, a decision in which the Sixth Circuit held that the express language in the relevant collective bargaining agreement unambiguously provided that retiree health care benefits were assured only for the duration of the agreement. *Watkins*, 875 F.3d at 325-26. In *Watkins*, the agreement provided that "For the duration of this Agreement, the Insurance Program shall be . . .," which the court ruled meant "for as long as the agreement lasts, Honeywell will provide health care as discussed in the Insurance Program." *Id*. at 325.

After Defendant notified the Court of the *Watkins* decision, Plaintiffs did not attempt to distinguish this case from *Watkins*. Plaintiffs instead noted that there were two Sixth Circuit cases that found lifetime health care benefits for union retirees. The Supreme Court granted *certiorari* in both of those cases and rendered decisions in both of them in late February 2018. First, on February 20, 2018, the Supreme Court rendered a per curiam decision in *CNH Industrial N.V. et al. v. Jack Reese, et al.*, S.Ct. No. 17-515. In *Reese*, the Supreme Court stated that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Id.* at 3. The *Reese* agreement did not contain any "provision specif[ying] a duration for health care benefits in particular." *Id.* at 7. The Supreme Court held that a collective bargaining agreement with a general durational clause (for the term of the agreement) – but not a different durational clause for health care benefits for retirees – did not vest retiree health care benefits for life. *Id.* at *8. Second, on February 26, 2018, the Supreme Court granted the petition for writ of certiorari in *Kelsey Hayes Co., et al. v. Int'l Union, et al.*, S.Ct. No. 17-908, and summarily remanded the case to the Sixth Circuit for further consideration in light of *Reese*. As a result, neither *Reese* nor *Kelsey Hayes* provides any support for Plaintiffs' position.

Like *Reese*, *Kelsey Hayes*, and *Watkins*, three other recent Sixth Circuit decisions have considered whether – and reached the conclusion that – absent an

express clause providing that retirees are entitled to vested lifetime health care benefits, CBAs do not vest retirees with lifetime health care benefits when the general durational clause is for the term of the agreement. *See Cooper v. Honeywell Int'l, Inc.*, No. 17-1042, 2018 WL 1190385 (Mar. 8, 2018, 6th Cir. 2018); *Serafino v. City of Hamtramck*, 707 F. App'x 345 (6th Cir. 2017); *Cole v. Meritor, Inc.*, 855 F.3d 695 (6th Cir. 2017).

Reviewing the CBAs, the Court concludes that Plaintiffs' retirees have not been vested with lifetime health care benefits.  Each of the CBAs at issue in this case included a durational clause terminating all provisions of the contract on a specific date. The following language from the 2007 CBA is typical of such a durational clause:

**XXXI. Duration**

* * *

This Agreement shall remain in full force and effect until 6:00 p.m., May 3, 2011, and shall thereafter be continued in full force and effect from year to year after 6:00 p.m., May 3, 2011, unless notice of termination or a desire to modify or change this Agreement is given in writing by either party at least sixty (60) days before the expiration date.

Dkt. No. 97, Ex. 18 (2007 CBA), at 71. Substantially identical language is included

in the other CBAs and Cleveland, Tennessee CBAs.[4]  It is also undisputed that either

Defendant or the UAW provided the required "notice of termination" in each year that

a CBA was scheduled to expire, and it is undisputed that each CBA did in fact expire

on the specific termination dates included in the contracts.

Under *Tackett* and its progeny, such general durational clauses require this

Court to reject plaintiffs' claims to vested lifetime health care benefits. An additional

provision in the CBAs only solidifies the conclusion that health care benefits expired

upon the termination of each CBA.  Specifically, each CBA included an "Agreement

Regarding Insurance" provision with a durational clause that applied to, among other

things, retiree health care insurance. The following language, also from the 2007

CBA, was typical:

**Section 8. Duration of Agreement**

---

[4]Dkt. No. 97 at Ex. 1, 1955 Master Agreement at 47-48; Ex. 2, 1958 Master Agreement at 41; Ex. 3, 1962 Master Agreement at 44; Ex. 4, 1965 Master Agreement at 49-50; Ex. 5, 1968 Master Agreement at 46-47; Ex. 6, 1971 Master Agreement at 47-48; Ex. 7, 1974 Master Agreement at 49-50; Ex. 8, 1977 Master Agreement at 50-51; Ex. 9, 1980 Master Agreement at 50-51; Ex. 10, 1983 Master Agreement at 43-44; Ex. 11, 1986 Master Agreement at 45; Ex. 12, 1989 Master Agreement at 41; Ex. 13, 1992 Master Agreement at 41-42; Ex. 14, 1995 Master Agreement at 42-43; Ex. 15, 1999 Master Agreement at 42; Ex. 16, 2003 Master Agreement at 43; Ex. 18, 2007 Master Agreement at 70-71; Ex. 20, HON-00036341-90 at 89-90 (1989 Cleveland CBA); Ex. 21, HON-00036269-310 at 309-10 (1992 Cleveland CBA); Ex. 22, HON-00037096-138 at 137-38 (1996 Cleveland CBA); Ex. 23, HON-00036415-59 at 58 (2000 Cleveland CBA); and Ex. 24, HON-00037015-063 at 60 (2004 Cleveland CBA).

> This Agreement relating to insurance shall remain in full force and effect without change until 6:00 p.m., May 3, 2011.

Dkt. No. 97, Ex. 18 (2007 CBA), Ex. B at 12. Each of the Master CBAs contained a substantially identical provision.[5]

The Court notes that Plaintiffs have not identified any language in the CBAs that indicates the parties' express agreement that Defendant would provide retirees with vested lifetime health care benefits, or any language that demonstrates the parties intended to bypass the general durational clauses with respect to health care benefits. The Court concludes that *Tackett* and its progeny dictates that Plaintiffs' health care benefits under each CBA ceased at the conclusion of that CBA. Dismissal of Plaintiffs' claim that retirees are entitled to lifetime health care benefits under the CBAs is warranted. The Court grants Defendant's Motion for Summary Judgment with respect to Plaintiffs' claim that Defendant breached the CBA when Defendant concluded that retirees are not entitled to vested "lifetime retirement health care, fully

---

[5]Dkt. No. 97 at Ex. 1, 1955 Master Agreement, Ex. B at 3-4; Ex. 2, 1958 Master Agreement, Ex. B at 3-4; Ex. 3, 1962 Master Agreement, Ex. B at 3-4; Ex. 4, 1965 Master Agreement, Ex. B at 3-4; Ex. 5, 1968 Master Agreement, Ex. B at 3-4; Ex. 6, 1971 Master Agreement, Ex. B at 3-4; Ex. 7, 1974 Master Agreement, Ex. B at 3-4; Ex. 8, 1977 Master Agreement, Ex. B at 4; Ex. 9, 1980 Master Agreement, Ex. B at 4; Ex. 10, 1983 Master Agreement, Ex. B at 3-4; Ex. 11, 1986 Master Agreement, Ex. B at 3-4; Ex. 12, 1989 Master Agreement, Ex. B at 3; Ex. 13, 1992 Master Agreement, Ex. B at 3; Ex. 14, 1995 Master Agreement, Ex. B at 3-4; Ex. 15, 1999 Master Agreement, Ex. B at 3; Ex. 17, 2003 Master Agreement, Ex. B at 3.

paid by the employer." Dkt. No. 1, ¶40.

To the extent Defendant's Motion for Summary Judgment seeks to preclude Plaintiffs' claims that Defendant breached the CBA by imposing premium obligations (caps) on retirees (or the amount of those caps), Defendant's Motion for Summary Judgment is denied for the reasons set forth in Section IV.A.

**D.      Plaintiffs' Motion for Leave to File Supplemental Pleading [Dkt. No. 127]**

Plaintiffs desire to supplement the pleadings with two events related to the implementation of the "caps" at issue – alleged events that did not occur until after litigation was commenced: (1) in November 2013, Defendant announced that it would be terminating all benefits for retirees who did not pay the contribution amounts Defendant said they owed; and (2) Defendant has failed to account for the $600/year it receives per retiree ($15 million/year total) from the federal government as a retiree drug subsidy under Medicare Part D, such that retirees are being overcharged.

As discussed in Section IV.A., the Court has held that Defendant had no right to impose the caps and enjoined Defendant from paying anything less than the full premium costs for retiree health care coverage under the CBAs.  Accordingly, the Court denies as moot Plaintiffs' Motion for Leave to File a Supplemental Pleading.

**E.      Defendant's Motion for Leave to file Reply Brief re: *Gallo v. Moen* [Dkt. No. 133]**

Defendant argued that it should be allowed to file a reply brief to a

27

supplemental brief filed by Plaintiffs pursuant to a Court order. Defendant asserts that, because Plaintiffs filed a 14-page supplemental brief (rather than the 7 ordered by the Court), a reply brief is warranted. The Court disagrees. The *Gallo* case, like the many other Sixth Circuit and Supreme Court cases briefed by the parties, has been carefully reviewed by the Court and no additional briefing is necessary to the Court's understanding or interpretation of the *Gallo* decision. Accordingly, the Court denies Defendant's Motion for Leave to File Reply Brief re: *Gallo*.

**F.      Defendant's Amended Motion to Distribute Notice to Class [Dkt. No. 138]**

Defendant moved the Court to distribute a notice to the class pursuant to a stipulated order entered on June 19, 2012. In light of the many rulings of the Court in this Order, some of which may have a significant impact on the scope and direction of this case, the Court finds that the relief requested by Defendant – distribution of a notice to class members – would not further the interests of justice, nor the efficiency of the parties or the judiciary, at this time. The Court denies Defendant's Amended Motion to Distribute Notice to Class, without prejudice. Defendant may seek such relief in the future, to the extent it deems such relief necessary and appropriate once the parties have had an opportunity to meet and confer.

**V.      CONCLUSION**

Accordingly, IT IS ORDERED that Plaintiffs' Motion for Partial Summary

Judgment [Dkt. No. 49] is GRANTED.

IT IS FURTHER ORDERED that Defendant is permanently enjoined from paying any amount less than the full premium for retirees' health care coverage under the 2003, 2007, 2011 CBAs and the Cleveland, Tennessee closing agreement.

IT IS FURTHER ORDERED that Defendant shall make whole those retirees for whom Defendant paid anything less than the full premium amount for health care coverage under the 2003, 2007, and 2011 CBAs or the Cleveland, Tennessee closing agreement.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment [Dkt. No. 77] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment on Defendant's Breach of Implied Warranty Counterclaim [Dkt. No. 94] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Dkt. No. 97] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Compel/Motion to Amend/Correct [Dkt. No. 127] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to file Reply Brief re: *Gallo v. Moen* [Dkt. No. 133] is DENIED.

IT IS FURTHER ORDERED that Defendant's Amended Motion to Certify

Class [Dkt. No. 138] is DENIED WITHOUT PREJUDICE .

IT IS FURTHER ORDERED that the parties shall APPEAR for a STATUS

CONFERENCE on this matter on April 30, 2018, at 10:30 a.m.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 29, 2018


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2018, by electronic and/or ordinary mail.


S/LaShawn R. Saulsberry
Case Manager