UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE,
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW), and
THOMAS BODE, BRUCE EATON,
WILLIAM BURNS, PETER ANTONELLIS, and
others similarly-situated,

        Plaintiffs,

                                          Case No. 11-CV-14036
v.                                        Hon. Denise Page Hood

HONEYWELL INTERNATIONAL INC.,

        Defendant.
_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND A PERMANENT INJUNCTION [#168], DENYING AS
MOOT PLAINTIFFS' MOTION TO FILE SUPPLEMENTAL PLEADING
[#169], GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT [#174], and DENYING AS MOOT PLAINTIFF'S OBJECTION
TO MAGISTRATE JUDGE'S ORDER DENYING MOTION TO COMPEL
[#86]**

**I.    INTRODUCTION**

Plaintiffs, including the UAW and the individually named Plaintiffs (retired hourly employees who worked for Defendant and its predecessors), filed the present action on September 15, 2011. Presently before the Court are the parties' cross-motions for summary judgment with respect to whether Plaintiffs are entitled to, and

Defendant is obligated to provide, minimum premium contributions for health care coverage for retirees of Defendant. Plaintiffs also filed a Motion to File Supplemental Pleading for the purpose of amending their pleadings. The motions are fully briefed ("Motion to Amend"), and the Court held a hearing on the motions on June 26, 2018.

## II. BACKGROUND[1]

For over 50 years, the UAW has represented more than 4,700 retired Honeywell (and its predecessors) manufacturing employees in collective bargaining negotiations. The UAW and Defendant have been parties to a series of CBAs that were renegotiated every three or four years. In every CBA executed from the 1965 CBA up to and including the 2003 and 2007 CBAs, the Agreement Regarding Insurance ("Agreement") provision included the following language (the "full " provision):

> [T]he Company shall contribute the full premium or subscription charge applicable to the coverages of a pensioner (not including a former employee entitled to or receiving a deferred vested pension) and an employee terminating at age 65 . . .

*See, e.g.,* Dkt. No. 49, Ex. 5 (1965 CBA), App'x C, Sect. 5(G), at 12-13; Dkt. No. 49, Ex. 8 (2003-2007 CBA), PgID 1905; Dkt. No. 49, Ex. 9 (2007-2011 CBA), PgID 19-12-13. The 2011 CBA consisted only of a "Memorandum of Terms of Settlement of

---

[1]An extensive recitation of the background of this case is set forth in the Court's March 29, 2018 Order, Dkt. No. 161, and the Court incorporates that background into this Order.

2

the 2011 UAW-Honeywell Master Negotiations" (the "Memorandum"). Nothing in the Memorandum addressed – or expressly eliminated – the "full premium" provision.

In 2003, the parties agreed to the inclusion of a new Part VI to Appendix C of the CBA (the "Plan"), a section that also was included in the 2007 CBA. Part VI of the Plan states:

> During the 2003 UAW Honeywell Master Negotiations, the Company and the Union shared a strong concern regarding the protection of retiree health care benefits. In 2003 UAW Honeywell Master Negotiations the Company and Union agree as follows:
>
> • The subject of health care benefits for present and future retirees, their dependents, and surviving spouses, including the limit described below on Company retiree health care contributions, will be a mandatory subject of bargaining for 2007 UAW Honeywell Master Negotiations and for all future UAW Honeywell Master Negotiations.
>
> • The Company will pay the cost of retiree health care coverage during the term of the 2003 UAW Honeywell Master Agreement as described in its Insurance Section. The Company's contribution for health care coverage after 2007 for present and future retirees, their dependents, and surviving spouses covered under the UAW Honeywell Master Agreement shall not be less than (A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company actuary's 2003 estimate of the Company's retiree health care contribution in 2007, whichever is greater. As stated above, this limit will be a mandatory subject of bargaining for 2007 UAW Honeywell Master Negotiations and for all future UAW Honeywell Master Negotiations. Notwithstanding such negotiations, the Company's contributions shall not be less than the greater of: (A) the actual amount of the Company's retiree health care contribution in 2007 or (B) the Company actuary's 2003 estimate of the Company's retiree health care contribution in

2007.

- The above limit on Company retiree health care contributions will not apply to any year prior to calendar year 2008.

\* \* \* \* \*

- The provisions of this Agreement concerning Retiree Health Care Costs and the Company's obligation to bargain regarding retiree health care benefits shall be binding upon the successors and assignees of the Company, unless Honeywell chooses to retain such obligations. . . .

- Provided however this Agreement concerning Retiree Health Care Costs and the Company's obligation to bargain regarding retiree health care cost benefits shall not impair any existing legal rights that current retirees may have with respect to their post employment health care benefits.

- The Company and the Union agree to work together to develop possible ways to contain health care costs, including drug costs, that will benefit plan participants and the locations covered under the UAW Honeywell Master Agreement.

[Docket No. 49, Ex. 8, Pg ID 1907]

On October 23, 2013, Defendant advised the UAW that Defendant would:

begin to cap contributions for those members of the class that (i) retired under the Honeywell-UAW Master CBA on or after May 3, 2003; or (ii) retired under the Cleveland, Tennessee CBA on or after March 13, 2004. This includes surviving spouses and eligible dependents of individuals that retired after those dates. Collections from those class members will commence on January 1, 2014. We will soon be sending out individual notices to those class members to inform them of the healthcare contributions they will owe beginning on January 1, 2014.

Plaintiffs objected on several grounds, including that the CBA did not contain a "cap." Defendant responded that the contribution language in Part VI constituted a cap and not a floor on Honeywell's contribution obligation. Defendant later sent letters to post-2003 retirees that it would be imposing a "cap" on January 1, 2014 (Dkt. No. 49, Exs. 14-15), and on January 1, 2014, Defendant began imposing that cap.

On March 29, 2018, the Court held that Defendant was entitled to summary judgment on Plaintiffs' claims that the retirees had vested lifetime healthcare benefits. The Court ruled that, because the CBAs did not expressly provide for lifetime healthcare benefits, the retirees were not entitled to lifetime healthcare benefits, a ruling consistent with the holdings of the Supreme Court and Sixth Circuit in the last three years. The Court also held that the language in Part VI (emphasis in original) (footnote omitted):

> [S]imply memorializes the parties' commitment that the "actual 2007 amount/2003 estimate amount" be "a mandatory subject[] of bargaining" in all future UAW Honeywell Master Negotiations. <u>What this means is that Part VI only requires the UAW and Defendant agreed to bargain the "actual 2007 amount/2003 estimate amount." Part VI does not contain any indication that the UAW and Defendant had agreed on any such amount or the establishment of a "cap" on Defendant's contributions for retiree health care coverage</u>. Accordingly, the Court concludes that the "full premium" provision is the only binding agreement between the parties with respect to the 2003 and 2007 CBAs – and, because no evidence has been submitted to the contrary, the 2011 CBA.
>
> The Court concludes that, in the context of Part VI, where the "shall not be less than language" clearly establishes the "floor" for the

amount of retiree health care coverage contribution Defendant was obligated to make, Defendant's contention that the multiple use of "limit" constitutes a maximum is, at best, only one interpretation of the term for purposes of the CBA. First, although the common meaning of "limit" is "a restriction on the size or amount of something permissible or possible," that does not necessarily suggest a maximum any more than a minimum. *See* https://www.merriam-webster.com/dictionary/limit (as of March 26, 2018) (which includes as one definition of "limit" as: "a prescribed maximum or minimum amount, quantity, or number"). The Court finds that another reasonable reading of "limit," taken in context as it is used in Part VI, is simply as a term that describes the "greater of the actual 2007 amount/2003 estimate amount" determination that must be the subject of bargaining.[]

As the parties did not reach an agreement regarding the "actual 2007 amount/2003 estimate amount" determination (or whether it is a floor or a ceiling) in the 2003, 2007, and (apparently) 2011 CBAs, the only binding language in the CBAs regarding Defendant's payment of retiree heath care costs was that Defendant "shall contribute the full premium or subscription charge" for retirees. Accordingly, the Court concludes that there is no evidence to support a finding that the CBAs provide for any "cap" on Defendant's retiree health care contribution.

On April 5, 2018, Defendant sent a letter to the retirees. The letter constituted a "notice of [Defendant's] intent to terminate the retiree medical and prescription drug coverage currently provided to [retirees] and [their] covered spouses and dependents effective July 31, 2018." Dkt. No. 163, Ex. B at PgID 7871. On May 1, 2018, the Court dismissed without prejudice Defendant's counterclaim.

Plaintiffs now seek summary judgment on their claim that they are entitled to a minimum premium payment from Defendant for healthcare coverage beyond July 31, 2018. Plaintiffs also seek to amend their pleadings to comport with the relief they

6

are seeking. Defendant counters that it is entitled to summary judgment because Plaintiffs are not entitled to any healthcare coverage after July 31, 2018 and, for that reason, the motion to amend the pleadings should be denied as futile.

## III. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. Id. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## IV. ANALYSIS

### A. Cross-Motions for Summary Judgment

Plaintiffs state, "[t]he sole dispute is vesting." Dkt. No. 181, PgID 9011. Plaintiffs suggest that they are entitled to annual minimum ("floor-level") contributions for health care coverage from Defendant pursuant to Part VI of Appendix C (the "Plan") in the 2003 and 2007 Master Agreements. Defendant contends that, as of August 1, 2018, Defendants are no longer responsible for

providing health care coverage – or making any contribution for health care insurance – to or on behalf of any Plaintiffs or retirees.

In a recent Sixth Circuit case, the court stated:

> The contracts governing this case are the CBAs negotiated by Honeywell and the labor organizations representing Honeywell's employees. We must "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." [*M&G Polymers USA, LLC v.*] *Tackett*, 135 S.Ct. [926,] 933 [(2015)]. "[W]e look first to the CBAs' explicit language for clear manifestations of the parties' intent .... If, however, the plain language is susceptible to more than one interpretation, we then consider extrinsic evidence to supplement the parties' intent." *Moore v. Menasha Corp.*, 690 F.3d 444, 451 (6th Cir. 2012). <u>Plaintiffs can succeed on their claims only if they prove one of two things: (1) the CBAs unambiguously provide retirees with lifetime healthcare benefits, or (2) the CBAs are ambiguous, and the extrinsic evidence demonstrates that the parties intended to vest retiree healthcare benefits</u>.

*Fletcher v. Honeywell Int'l Inc.*, 892 F.3d 217, 221-22 (6th Cir. 2018).

As stated above, the Court previously held that Plaintiffs are not entitled to vested lifetime healthcare benefits and/or contributions from Defendant pursuant to the applicable CBAs. The Court's holding was based on: (1) the general durational clause in those CBAs terminated upon the expiration of each of those CBAs; and (2) no other CBA provision explicitly indicated that Plaintiffs were entitled to lifetime health care benefits.

Plaintiffs argue that the expiration of the CBAs is meaningless as it relates to

9

the promises made by Defendant in Part VI of the Plan with respect to post-CBA retiree healthcare benefits. In support of their argument that the Plan affords retirees a vested right to minimum contributions for health care coverage, Plaintiffs rely on the following provisions:

> A. "During the 2003 UAW Honeywell Master Negotiations, the Company and the Union shared a strong concern regarding the protection of retiree health care benefits."
>
> B. "The Company's contribution for health care coverage after 2007 for present and future retirees, . . . shall not be less than . . ." (1) $8,470 (single) and $20,531 (family) pre-Medicare; and (2) $4,207 (single) and $10,198 (family) Medicare (collectively, "the 2007 CBA formula").
>
> C. "As stated above, this limit will be mandatory subject of bargaining for 2007 UAW Honeywell Master Negotiations and for all future UAW Honeywell Master Negotiations."
>
> D. "Notwithstanding such negotiations, the Company's contributions shall not be less than the greater of . . ." the 2007 CBA formula.

Plaintiffs argue that the foregoing provisions constitute explicit promises that Defendant would continue to provide health care benefits after the expiration of the 2003, 2007, and 2011 CBAs. Plaintiff contends that those provisions reflect a durational promise – that the "safety net" minimums would become effective after the applicable CBA expires – for all employees who retired before May 1, 2016.

Specifically, Plaintiffs propose that when the parties expressed that they "shared a strong concern regarding the protection of retiree health care benefits," it was an

explicit representation of "the parties' 'protection' intentions." Plaintiffs state that the "shall not be less than" language demonstrates that Defendant agreed to continue providing contributions to retirees – at a level that reflected the minimum amount to which Plaintiffs were entitled (and, conversely, the maximum amount Defendant would have to pay). Plaintiffs argue that Defendant is obligated to pay "hard-dollar minimums" after the CBAs expired because the Plan's language that the contributions "shall not be less than" the 2007 CBA formula "notwithstanding" later events would not make sense – and would not be given effect – unless Defenant was obligated to continue providing healthcare coverage for retirees after the CBAs expired.

Defendant first argues that the Court determined in its March 29, 2018 Order that Plaintiffs do not have vested lifetime healthcare benefits, such that any healthcare benefits set forth in a CBA ceased upon termination of the CBAs. Defendant contends that, based on the Court's ruling, Defendant had (and has) no obligation to even provide healthcare coverage beyond the expiration date of the CBAs (the last of which expired on May 3, 2016, though Defendant continued to provide healthcare coverage pending the Court's ruling on the motions regarding the vested lifetime healthcare benefits and, only now, are scheduled to expire on July 31, 2018). Without an obligation to provide healthcare coverage, Defendant asserts that it can have no obligation to make contributions to retirees in <u>any</u> amount as of August 1, 2018.

11

Defendant next argues that Plaintiffs have not identified in their briefing on the instant motions – and cannot identify – any language in the Agreement or the Plan (including Part VI) that requires Defendant to make minimum payments or provide health care coverage. Citing *Fletcher*, 892 F.3d at 223 ("a CBA's general durational clause applies to healthcare benefits unless it contains, clear, affirmative language indicating the contrary"). Defendant argues that the absence of any clear vesting language is particularly significant because the CBAs contained express vesting language regarding other benefits, including pension benefits, which demonstrates that the parties knew how to expressly vest benefits and did not do so with respect to healthcare benefit contributions. *See, e.g., Cooper v. Honeywell Int'l Inc.*, 884 F.3d 612, 620-21 (6th Cir. 2018); *Gallo v. Moen, Inc.*, 813 F.3d 265, 270 (6th Cir. 2016). *See also Watkins v. Honeywell Int'l Inc.*, 875 F.3d 321, 327 (6th Cir. 2017) (that "the parties anticipated, or even hoped, that th[e] benefits would continue" is not enough to vest them).

Defendant contends the Court concluded in the March 29, 2018 Order that the language in Part VI "simply memorializes the parties' commitment that the 'actual 2007 amount/2003 estimate amount' be '<u>a mandatory subject[] of bargaining</u>' in all future UAW Honeywell Master Negotiations," and the Court did not rule that Defendant had to provide healthcare coverage post-CBA. Defendant asserts that the

12

language in Part VI is nothing more than aspirational, as evidenced by the fact that it is in the future tense and, as Plaintiffs states,[2] indicates an intent to vest benefits. As Defendant argues, "the use of the future tense without more–without words committing to retain the benefit for life–does not guarantee lifetime benefits." *Cole v. Meritor, Inc.*, 855 F.3d 695, 700 (6th Cir. 2017); *Gallo*, 813 F.3d at 271 (same).

Plaintiff argues that the language is not aspirational, as evidenced by: (1) the mandatory terms "shall not be less than," (2) the unequivocal hard-dollar minimums, (3) the fact that the minimum contribution amounts apply "notwithstanding" all future negotiations, and (4) the parties' explicit intentions that the provisions in Part VI reflect "a strong [shared] concern regarding the protection of retiree health care benefits." Plaintiffs argue that these "safety-net" terms in the Plan differentiate the Agreement – and this case – from the cases Defendant cites in support of its argument (*Watkins*, *Fletcher, etc.*).

Defendant correctly asserts that the provisions in the Plan, which Defendant argues do not clearly evidence guaranteed benefits, are expressly subordinate to the terms of the Agreement Regarding Insurance. Dkt. No. 175, Ex. 4 ("In the event of any conflict between the provisions of the Plan and the provisions of this Agreement [Regarding Insurance], the provisions of this Agreement [Regarding Insurance] will

---

[2]*See, e.g.,* Dkt. No. 181, PgID 9009, 9010, 9016, 9017, 9021, 9024, 9033.

supersede the provisions of the Plan.").

The Court holds that, as of August 1, 2018, Defendant is not required to provide Plaintiffs healthcare coverage or make any minimum premium contributions regarding the same. Neither the Agreements nor the Plan include any language that expressly states that Defendant has to provide healthcare coverage or healthcare premium contributions. As the Court stated in its March 29, 2018, the parties expressed an "intention" to "protect[] retiree health care benefits" and a commitment to bargain regarding the amount of Defendant's minimum premium contributions in the future (the language in Part VI of the Plan reflects only "the parties' commitment that the 'actual 2007 amount/2003 estimate amount' be 'a mandatory subjection of bargaining' in all future UAW Honeywell Master Negotiations," Dkt. No. 161, PgID 7799).

Under current case law,[3] the foregoing language does not constitute a promise

---

[3]Much like Sixth Circuit Judge Eric L. Clay, as set forth in his concurrence in *Fletcher,* the undersigned has reached its conclusion in this case:

> [B]ecause I am required to by binding case law. However, it is not obvious that the intent of the parties was as clearly expressed as our cases indicate. Indeed, the agreements at issue appear on their face to be ambiguous, and they were drafted prior to the line of cases beginning with the Supreme Court's decision in *M & G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015), which completely upended the way our Circuit interprets the vesting of benefits in collective-bargaining agreements. I believe that the Court should permit the admission of extrinsic evidence in this case in order to ascertain the intent of the parties. Nonetheless, our cases preclude us from doing so.

*Fletcher*, 892 F.3d at 228 (Clay, J., concurring).

14

to continue providing healthcare coverage or minimum healthcare premium contributions to retirees. The Court does not find the language regarding retiree healthcare benefits in the Agreement or the Plan to be ambiguous, such that a reasonable reading of either the Agreement or the Plan could yield an interpretation that Defendant promised or contracted to provide retirees with healthcare benefits after the CBAs expired. There is no indication, express or implied, that retirees were entitled to lifetime healthcare benefits. The language addressed the parties' intentions and aspirations, neither of which are sufficient to convey upon Plaintiffs the benefits they claim. Plaintiffs' Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

### B. Motion to Amend

In the Motion to Amend, Plaintiffs seek to amend their pleadings to bring their complaint "up to date" by addressing Defendant's expressed intent to terminate the minimum contribution amounts ("floor-level" amounts) as of August 1, 2018. Because the Court has held that Defendant is not required to provide healthcare benefits as of August 1, 2018, the Court denies as moot Plaintiff's motion to supplement its pleadings to seek relief for such actions.

### V. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' Motion for Summary Judgment

and a Permanent Injunction [Dkt. No. 168] is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment [Dkt. No. 174] is GRANTED.

IT IS FURTHER ORDERED Plaintiffs' Motion to File Supplemental Pleading [Dkt. No. 169] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's Objection to the Magistrate Judge's Order Denying Motion to Compel [Dkt. No. 86] is DENIED AS MOOT.

IT IS FURTHER ORDERED that, as there are no remaining issues or claims in this matter, Plaintiff's cause of action is DISMISSED.

IT IS ORDERED.

                    S/Denise Page Hood
                    Denise Page Hood
                    Chief Judge, United States District Court

Dated: July 25, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2018, by electronic and/or ordinary mail.

                    S/LaShawn R. Saulsberry
                    Case Manager